UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JACOB ALLEN MONTEER, )<br>)<br>　Plaintiff, )<br>)<br>vs. )<br>)<br>ABL MANAGEMENT INC., et al., )<br>)<br>　Defendants. ) | Case No. 4:21-CV-756 ACL |

**MEMORANDUM AND ORDER**

This matter is before the Court on the motion of plaintiff Jacob Allen Monteer, a pretrial detainee at Phelps County Jail, for leave to commence this civil action without prepayment of the required filing fee. ECF. No. 2. Having reviewed the motion and the financial information submitted in support, the Court has determined to grant the motion, and assess an initial partial filing fee of $58.63. Furthermore, after reviewing the complaint, the Court will partially dismiss the complaint and will order the Clerk to issue process or cause process to be issued on the non-frivolous portions of the complaint.

**28 U.S.C. § 1915(b)(1)**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to his account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court

each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id.*

In support of the instant motion, plaintiff submitted a copy of his inmate account statement. ECF No. 3. A review of plaintiff's account indicates an average monthly deposit of $293.00 and an average monthly balance of $65.93. Plaintiff has insufficient funds to pay the entire filing fee. Accordingly, the Court will assess an initial partial filing fee of $58.63, which is 20 percent of plaintiff's average monthly deposit.

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must assume the veracity of well-pleaded facts but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

This Court must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within

the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even self-represented complaints must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, nor are they required to interpret procedural rules in order to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff, a practicing Muslim, alleges he has been denied meals to accommodate his religious dietary needs. At all times relevant to his complaint, plaintiff was a pretrial detainee incarcerated at the Phelps County Jail (the "Jail"). Plaintiff sues four defendants in their official and individual capacities: ABL Management Inc. ("ABL") (Food Contractor for the Jail), Heather Westerfield (Cook for ABL), Timothy Durbin (Sergeant), and Joe Taylor (Lieutenant and Jail Administrator). Plaintiff seeks monetary, declaratory, and injunctive relief pursuant to the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. 2000cc, *et seq.* ("RLUIPA"), and 42 U.S.C. § 1983 for First Amendment, Equal Protection, and Due Process violations.[1] Plaintiff also attempts to bring a claim under the "Detainee Treatment Act of 2005."

Plaintiff states he completed a "Religious Meal Preference" form at the Jail and requested Kosher meals on February 24, 2020 and May 7, 2021. Plaintiff explains that the Inmate Handbook provides for religious meal preferences. Plaintiff asserts "Jail Supervisors have told [him] that the Jail has a Kosher menu." Plaintiff alleges ABL and its employee cook, Heather Westerfield,

---

[1] The Court notes that plaintiff appears to incorrectly cite to the "Civil Rights Act of 1964" as a basis for relief. Title VI of the Civil Rights Act of 1964 prohibits racial discrimination under any programs receiving Federal financial assistance, *FCS Advisors, LLC v. Missouri*, 929 F.3d 618, 622 (8th Cir. 2019), whereas the purpose of Title VII is to ensure a workplace environment free of discrimination, *Ricci v. DeStefano*, 557 U.S. 557, 580 (2009). Because plaintiff's citation to the Civil Rights Act of 1964 appears to be misplaced, the Court will interpret such alleged claims as brought pursuant to 42 U.S.C. § 1983.

refused to provide him with a religious diet. Plaintiff alleges Westerfield "[told] the Jail that [his] meals are Kosher" and would "lie to jail staff about [his] meals being appropriate." For example, plaintiff states he was provided with a "bologna sandwich with cheese despite cheese on meat being in direct violation of all Kosher dietary laws."

Plaintiff further alleges that from May 7, 2021 to May 24, 2021, he was "forced to eat [] unnutritional [sic], humiliating, [and] degrading meals." Plaintiff states he was denied milk, protein, and eggs, and "was compelled to eat dry corn flakes in a tortilla shell every morning." Plaintiff alleges Westerfield provided him with degrading meals in retaliation for the grievances he filed with the Jail.

Plaintiff asserts he "explained to Jail Staff the abridgment of [his] rights," but defendants Sergeant Durbin and Lieutenant Taylor refused to provide him with Kosher meals or compel ABL to accommodate his religious requests. Plaintiff states Sergeant Durbin would call him "a liar and harass [him] in return for [him] trying to exercise his religion." At some point, plaintiff alleges he spoke with Lieutenant Taylor's Administrative Assistant who confirmed his "meals [were] inappropriate," and Staff Sergeant Jackson "agreed that [the] Jail Policy [was] not being followed." Sergeant Jackson allegedly told plaintiff that he directed Lieutenant Taylor to provide him with Kosher meals or give a valid reason for his denial. Plaintiff states if he "had been any other inmate they would have (at worst) received a vegetarian meal."

Plaintiff further asserts the Jail does not allow Muslims to fast during Ramadan and does not recognize Muslim holidays, despite recognizing Christian holidays such as Easter and Christmas. Plaintiff does not, however, state that he personally was not permitted to fast. Plaintiff complains inmates receive candy canes at Christmas with a note "that candy canes are shepherd staffs, and an upside down 'J' for Jesus."

- 4 -

Additionally, plaintiff takes issue with the Jail's alleged refusal to grant him a hearing regarding the institutional grievances he has filed. Plaintiff states defendant Durbin "completely ignore[d his] claims" without an investigation, and defendant Taylor "will not answer [his] appeals." Plaintiff appears to allege that his grievances were denied as retaliation for his religious accommodation requests.

## Discussion

### I. Plaintiff's Claims Brought Under RLUIPA

The Religious Land Use and Institutionalized Persons Act provides, in relevant part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person –
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). "The Act defines 'religious exercise' to include 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'" *Cutter v. Wilkinson*, 544 U.S. 709, 715 (2005) (quoting 42 U.S.C. § 2000cc-5(7)(A)). "'A person may assert a violation of [RLUIPA] as a claim or defense in a judicial proceeding and obtain appropriate relief against a government.'" *Id.* at 716 (quoting 42 U.S.C. § 2000cc-2(a)).

Having carefully reviewed the complaint, the Court finds that plaintiff has made a sufficient threshold showing of a substantial burden on his religious exercise to survive initial review. Plaintiff alleges he is a practicing Muslim and has stated the religious significance of a Kosher diet. Plaintiff asserts the defendants are substantially burdening the exercise of his religion by denying him access to Kosher meals on multiple occasions despite notifying them of his religious dietary needs.

Naming a government official in his or her official capacity is the equivalent of naming the government entity that employs the official. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Here, Phelps County employs defendants Sergeant Durbin and Lieutenant Taylor, and ABL employs defendant Westerfield.[2] Plaintiff's RLUIPA claims against defendants Westerfield, Sergeant Durbin, and Lieutenant Taylor, in their official capacities, pass initial review under § 1915. As such process shall issue to these defendants in their official capacities on plaintiff's RLUIPA claims for injunctive and declaratory relief only.[3]

Plaintiff's RLUIPA claims against defendants in their individual capacities will be dismissed, however, because the statute does not allow for claims against individuals. *Blake v. Cooper*, 2013 WL 523710, *1 (W.D. Mo. Feb. 12, 2013); *Waff v. Reisch*, 2010 WL 3730114, *11 (D.S.D. July 30, 2010) ("RLUIPA does not authorize individual capacity claims against prison officials."); *Van Wyhe v. Reisch*, 536 F.Supp.2d 1110, 1118 (D.S.D.) (same), *aff'd in part, rev'd in part on other grounds*, 581 F.3d 639 (8th Cir. 2009); *Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012) ("[RLUIPA] does not create a cause of action against state employees in their personal capacity.").

---

[2] "There is no question that . . . a private corporation to which the [] County Jail has delegated its constitutional responsibility to provide adequate nutrition that complies with prisoners' religious requirements—is a state actor, and the overwhelming majority of federal courts have so found." *Woodstock v. Shaffer*, 169 F. Supp. 3d 1169, 1170-71 (D. Colo. 2016) (citing *e.g.*, *Dotson v. Shelby County*, 2014 WL 3530820 at *13 (W.D. Tenn. July 15, 2014); *Pagan v. Westchester County*, 2014 WL 982876 at *24 (S.D.N.Y. Mar. 12, 2014), *as amended on other grounds*, 2015 WL 337403 (S.D.N.Y. Jan. 26, 2015); *DeJesus v. Aramark Food Services, Inc.*, 2014 WL 144732 at *3 n. 2 (E.D. Pa. Jan. 14, 2014); *Johnson v. ARAMARK*, 2012 WL 219503 at * 2 n. 3 (W.D. Ky. Jan. 25, 2012), *aff'd*, 482 Fed. Appx. 992 (6th Cir. Nov. 5, 2012); *Frazier v. ARAMARK*, 2011 WL 3847188 at * 2 (E.D. Cal. Aug. 30, 2011)).

[3] "[T]he Religious Land Use and Institutionalized Persons Act unambiguously conditions receipt of federal prison funds on a State's consent to suit; however, that waiver does not extend to money damages. *Amos v. Karol*, No. 1:14-CV-63 SNLJ, 2016 WL 492707, at *2 (E.D. Mo. Feb. 9, 2016) (citing *Van Wyhe v. Reisch*, 581 F.3d 639, 654 (8th Cir. 2009)).

## II. Plaintiff's Claims Brought Under 42 U.S.C. § 1983

### A. Official Capacity Claims

Plaintiff alleges the defendants violated his constitutional rights under 42 U.S.C. § 1983. As discussed above, naming defendants in their official capacity is the equivalent of naming their employer. To state a claim against Phelps County, plaintiff must allege that a policy or custom is responsible for violating his constitutional rights. *Monell v. Dep't of Social Services*, 436 U.S. 658, 690-91 (1978). Similarly, ABL is only liable when an official policy or custom of the corporation causes the alleged deprivation of federal rights. *See Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975 (8th Cir. 1993) (stating that a corporation acting under color of state law will only be held liable where "there is a policy, custom or action by those who represent official policy that inflicts injury actionable under § 1983"). *See also Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993) ("It is clear that a private entity which contracts with the state to perform a traditional state function such as providing medical services to prison inmates may be sued under § 1983 as one acting "under color of state law."), *abrog. on other grounds as recog. by Warren v. Prison Health Servs., Inc.*, 576 F. App'x 545, 559 (6th Cir. 2014).

"Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). *See also Russell v. Hennepin Cty.*, 420 F.3d 841, 847 (8th Cir. 2005) ("A policy is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible . . . for establishing final policy with respect to the subject matter in question"). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional

violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id.* at 390.

Alternatively, a plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, the plaintiff must prove:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013). Finally, a plaintiff can show municipal liability by establishing a deliberately indifferent failure to train or supervise. To do so, the plaintiff must demonstrate a "pattern of similar constitutional violations by untrained employees." *S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Plaintiff's complaint does not provide any factual allegations to support a municipal liability claim against either Phelps County or ABL. A policy is a "deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin*, 829 F.3d at 700. Plaintiff points to no facts tending to show that an official of Phelps County or ABL made a deliberate choice to institute an official policy that is either unconstitutional on its face or in its implementation. To the contrary, plaintiff explicitly alleges that the Jail's inmate handbook provides for a "Religious Meal Preference," Jail Supervisors informed him that the Jail has a Kosher menu, and non-party Staff Sergeant Jackson "agreed that [the] Jail Policy [was] not being followed." Thus, plaintiff actually alleges that Phelps County's

policies are constitutional, but it was the individual employees – Sergeant Durbin, Lieutenant Taylor, and Westerfield – who failed to follow such policies.

Plaintiff also has not provided any factual allegations to support the contention that Phelps County or ABL violated his constitutional rights due to an unofficial custom. In order to demonstrate that a municipality has an unofficial custom, plaintiff must show a widespread pattern of misconduct, that policymaking officials were deliberately indifferent to or tacitly authorized the misconduct, and that the custom was the driving force behind the constitutional violation. *Johnson*, 725 F.3d at 828. Plaintiff does not make any specific allegations of widespread misconduct. To the contrary, plaintiff alleges that his treatment was personal, stating that if he "had been any other inmate [he] would have (at worst) received a vegetarian meal." Moreover, plaintiff alleges that other employees of the Jail, such as Sergeant Jackson, told Lieutenant Taylor to provide him with Kosher meals. Plaintiff also does not make a showing that any officials from ABL were aware of Westerfield's misconduct as a cook and were either deliberately indifferent to or tacitly authorized such behavior.

Having carefully reviewed and liberally construed the plaintiff's complaint, the Court will dismiss plaintiff's official capacity claims against all defendants under 42 U.S.C. § 1983.

**B. Individual Capacity Claims**

*A. Free Exercise Clause of the First Amendment*

The First Amendment provides, in relevant part, that Congress shall make no law prohibiting the free exercise of religion. U.S. CONST. amend. I. Inmates retain the protections of the First Amendment, *Turner v. Safley*, 482 U.S. 78 (1987), and must be provided reasonable opportunities to exercise their First Amendment right to religious freedom. *Cruz v. Beto*, 405 U.S. 319 (1972). In order to present a valid First Amendment claim, plaintiff has the burden of establishing that the alleged religious belief or ritual in question (in this case the receipt of some

sort of special diet) is based upon a teaching of his religion, that his belief in the teaching is sincerely held, and that the governmental action in question infringes upon his free exercise of this belief. *Goff v. Graves*, 362 F.3d 543, 547 (8th Cir. 2004) (citing *Hamilton v. Schriro*, 74 F.3d 1545, 1550 (8th Cir. 1996)).

Plaintiff alleges defendants violated his Free Exercise rights under the First Amendment by denying his faith-based requests for a Kosher diet. Plaintiff states he informed defendants of his religious dietary requirements as a sincere follower of the Muslim faith, completed a "Religious Meal Preference" form as per the Jail's Inmate Handbook, and requested Kosher meals on specific dates. Plaintiff alleges Westerfield refused to provide him with a religious diet, and she would "lie to jail staff about [his] meals being appropriate." Plaintiff further alleges Sergeant Durbin and Lieutenant Taylor explicitly refused to provide him with religious meals, Sergeant Durbin called him a liar and harassed him, and Lieutenant Taylor disregarded his superior's order to provide him with Kosher meals. "[P]rison inmates are entitled to reasonable accommodation of their religious dietary needs." *Love v. Reed*, 216 F.3d 682, 689 (8th Cir. 2000).

Having carefully reviewed and liberally construed plaintiff's complaint, the Court finds the individual capacity claims against defendants Westerfield, Durbin, and Taylor for a violation of his Free Exercise rights under the First Amendment survive initial review and should not be dismissed at this time.

### B. Establishment Clause of the First Amendment

The Establishment Clause of the First Amendment prohibits governments from making any laws "respecting an establishment of religion." Under this clause, "[i]t is beyond dispute that, at a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which establishes a state religion or religious faith, or tends to do so." *Lee v. Weisman*, 505 U.S. 577, 587 (1992). Although there is

some question as to what the proper test is for determining whether the Establishment Clause has been violated in different contexts, *see, e.g., Tangipahoa Parish Bd. of Educ. v. Freiler*, 530 U.S. 1251 (2000) (Scalia, J., dissenting from denial of cert.), it appears that the Eighth Circuit employs the *Lemon* test, under which a challenged practice will be upheld only if "(1) it has a secular purpose; (2) its principal or primary effect neither advances nor inhibits religion; and (3) it does not foster an excessive entanglement with religion." *ACLU Neb. Found. v. City of Plattsmouth, Neb.*, 419 F.3d 772, 775 (8th Cir. 2005) (citing *Lemon v. Kurtzman*, 403 U.S. 602, 612-13 (1971)).

As the Seventh Circuit has explained, the *Lemon* test is directed primarily at those situations in which the government has allegedly acted to assist an existing religious group, such as where local governments permit religious monuments on public lands. *Kerr v. Farrey*, 95 F.3d 472, 478-79 (7th Cir. 1996). Therefore, the Establishment Clause is not a perfect fit for claims, such as plaintiff's, in which he does not appear to be alleging that a government actor is "coercing him . . . to subscribe to religion generally, or to a particular religion." *Id.*

Here, plaintiff alleges a violation of the Establishment Clause on the basis that the Jail passes candy canes out to inmates on Christmas with a note "that candy canes are shepherd staffs, and an upside down 'J' for Jesus." Such an allegation does not rise to the level of a constitutional violation. *See, e.g., Blagman v. White*, 112 F. Supp. 2d 534, 540-41 (E.D. Va. 2000) (prison "observances of such traditional holidays as Christmas and Thanksgiving do not rise to the level of violations of the Establishment Clause" because "the law has come to recognize that many typical Thanksgiving and Christmas holiday observances are essentially secular in nature"); *Torricellas v. Poole*, 954 F.Supp. 1405, 1411-12 (C.D.Cal. 1997), *aff'd*, 141 F.3d 1179 (9th Cir. 1998) (prison Christmas party did not violate Establishment Clause).

Given that plaintiff has not articulated any coercion on behalf of defendants to support or participate in a particular religion or its exercise, other than being given a candy cane on Christmas

with a Christian-forward message, his Establishment Clause claims against defendants do not survive initial review and will be dismissed.

### C. First Amendment Retaliation

In order to allege a claim of retaliation in violation of the First Amendment, plaintiff must show (1) he engaged in a protected activity, (2) the official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity. *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004), *cert. denied*, 546 U.S. 860 (2005). The retaliatory conduct itself need not be a constitutional violation; the violation is acting in retaliation for "the exercise of a constitutionally protected right." *Cody v. Weber*, 256 F.3d 764, 771 (8th Cir. 2001) (citing *Madewell v. Roberts*, 909 F.2d 1203, 1206-07 (8th Cir. 1990)).

As to Westerfield, plaintiff alleges she "began to punish [him] with degrading meals" after he filed grievances for not receiving a Kosher diet. For example, plaintiff states he was served "dry corn flakes in a tortilla shell every morning." Taking plaintiff's allegations as true, the Court finds plaintiff has alleged sufficient facts to pass initial review on a First Amendment retaliation claim against Westerfield in her individual capacity.

As to Sergeant Durbin, plaintiff alleges he mishandled his grievances by failing to answer his claims and closing his appeals. Such a claim fails because plaintiff does not allege that Durbin was motivated by plaintiff's exercise of protected activity, and the general denial of grievances is not the type of adverse action that would deter an inmate of ordinary firmness from continuing to exercise his First Amendment right to file grievances and seek judicial remedies. *See Gonzalez v. Bendt*, 971 F.3d 742, 746 (8th Cir. 2020). While plaintiff also alleges that Sergeant Durbin called him a liar and harassed him as a result of his requests for dietary religious accommodations, he does not allege any facts to support such harassment, such as when, how, or what kind of

harassment occurred. Federal courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15. Thus, plaintiff's First Amendment retaliation claim against Sergeant Durbin will be dismissed.

To the extent plaintiff is intending to allege that defendant Durbin violated his constitutional rights by denying his grievances, the Court notes that allegations of improperly processed or denied grievances do not state an actionable constitutional claim. *See Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (a grievance procedure is procedural right only and confers no substantive right on inmate); *Isaac v. Unknown Flenoid, et al.*, No. 1:16-CV-27-SNLJ, 2016 WL 2609793, at *2 (E.D. Mo. May 6, 2016) ("a state grievance procedure does not confer any substantive constitutional right upon prison inmates.").

As to Lieutenant Taylor, plaintiff alleges he did not follow prison policy by providing him religious meals, and by not following his supervisor's instruction to provide such meals. Plaintiff does not allege, however, that Lieutenant Taylor's failure to follow prison policy was in retaliation for filing of grievances, and it appears from the complaint that defendant Taylor denied him of Kosher meals both before and after grievances were filed.

To the extent plaintiff is intending to allege that defendant Taylor violated his constitutional rights by not following prison policy, generally, such a claim is not actionable under § 1983. "An inmate has a liberty interest in the nature of his confinement, but not an interest in the procedures by which the state believes it can best determine how he should be confined." *Sutton v. Corizon Health, Inc.*, No. 1:20-CV-00160-HEA, 2020 WL 6342667, at *7 (E.D. Mo. Oct. 29, 2020) (citing *Kennedy v. Blankenship*, 100 F.3d 640, 643 (1996)). "[T]here is no constitutional liberty interest in having . . . prison officials follow prison regulations." *Phillip v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) (citing *Kennedy*, 100 F.3d at 643). "Rather, any liberty interest must be an interest in the nature of the prisoner's confinement, 'not an interest in the procedures by which the state

- 13 -

believes it can best determine how he should be confined.'" *Id.* (citing *Kennedy*, 100 F. 3d at 643). As such, to the extent Plaintiff asserts a constitutional rights deprivation based upon Lieutenant Taylor's failure to follow the Jail's policy, such allegation does not state a claim upon which relief can be granted.

Having carefully reviewed and liberally construed plaintiff's complaint, his First Amendment retaliation claim against defendant Westerfield in her individual capacity survives initial review and should not be dismissed at this time. Plaintiff's retaliation claims against defendants Sergeant Durbin and Lieutenant Taylor do not survive initial review and will be dismissed.

### *D. Equal Protection*

The Equal Protection clause of the Fourteenth Amendment prohibits religious discrimination by the state. To establish an Equal Protection claim, plaintiff must show he is treated differently from similarly situated inmates and that the different treatment is based upon a suspect classification or fundamental right. *See Patel v. United States Bureau of Prisons*, 515 F.3d 807, 816 (8th Cir. 2008). Religion is a suspect classification, and therefore, plaintiff must show that the decision of the defendants was motivated by intentional discrimination and furthered no legitimate penological interest. *Id.* at 816-17; *see also Rouse v. Benson.* 193 F.3d 936, 942 (8th Cir. 1999).

Plaintiff states he is a Muslim, and Westerfield, Sergeant Durbin, and Lieutenant Taylor intentionally denied him Kosher meals after he submitted an accommodation request as per the Jail's Inmate Handbook. Plaintiff alleges Westerfield would "lie to jail staff about [his] meals being appropriate," Sergeant Durbin called him a liar and harassed him as a result of his requests for dietary religious accommodations, and Lieutenant Taylor disregarded his superior's order to provide him with Kosher meals.

Having carefully reviewed and liberally construed the plaintiff's complaint, the Court finds plaintiff has stated plausible Equal Protection claims against all named defendants and should not be dismissed at this time.

### *E. Due Process*

Plaintiff's Due Process claim is based on allegations that he "sent dozens of grievances per Jail Policy" and such grievances have either not been answered or have been closed without investigation. As previously discussed, it is well established that there is no federal constitutional liberty interest in having prison officials follow prison regulations. *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) (citing *Kennedy*, 100 F.3d at 643; *see also Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997) (failure to follow prison policy is not a basis for § 1983 liability). Also, there is no federal constitutional right to a prison grievance procedure, and neither state law nor state policy creates one. *See Buckley*, 997 F.2d at 495 (a prison officials' failure to process or investigate grievances, without more, is not actionable under § 1983; grievance procedure is procedural right only and does not confer substantive right on inmate); *see also Burnside v. Moser*, 138 Fed. App'x 414, 416 (3d Cir. 2005) (prisoners do not have a constitutionally protected right to a prison grievance process).

Because plaintiff has no substantive right to a grievance procedure, the Court need not reach what procedural due process is due. All of plaintiff's allegations regarding the defendants' handling, processing, and responding to grievances fail to state a claim under § 1983.

Having carefully reviewed and liberally construed the plaintiff's complaint, his Due Process claims against all defendants do not survive initial review and will be dismissed.

### III. Plaintiff's Claims Brought Under the Detainee Treatment Act of 2005

The Federal Detainee Treatment Act of 2005 ("DTA") is codified at 42 U.S.C. §§ 2000dd and 42 U.S.C.2000dd–0. Section 2000dd(a) states "[n]o individual in the custody or under the

physical control of the United States Government, regardless of nationality or physical location, shall be subject to cruel, inhuman, or degrading treatment or punishment." Neither statutory section creates a private cause of action for violations of the statute. 42 U.S.C. §§ 2000dd and 2000dd–0; *see also In re Iraq and Afghanistan Detainees Litig.*, 479 F.Supp.2d 85, 107 n. 23 (D.D.C.2007) (referring to the DTA when stating that "Congress has twice issued legislation addressing detainee treatment without creating a private cause of action for detainees injured by military officials."). Given that plaintiff is not a detainee within the meaning of the statute and there is no private cause of action, his DTA claims against all defendants will be dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed *in forma pauperis* (ECF No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial filing fee of $58.63 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that the Clerk shall issue process or cause process to issue upon the complaint against defendants Westerfield, Durbin, and Taylor in their official capacities as to plaintiff's claims brought pursuant to the Religious Land Use and Institutionalized Persons Act for declaratory and injunctive relief only.

**IT IS FURTHER ORDERED** that the Clerk shall issue process or cause process to issue upon the complaint against defendants Westerfield, Durbin, and Taylor in their individual capacities as to plaintiff's claims brought under the First Amendment Free Exercise Clause and the Fourteenth Amendment Equal Protection Clause.

**IT IS FURTHER ORDERED** that the Clerk shall issue process or cause process to issue upon the complaint against defendant Westerfield in her individual capacity as to plaintiff's First Amendment retaliation claim.

**IT IS FURTHER ORDERED** that that the Clerk shall not issue process or cause process to issue upon the complaint as to plaintiff's official capacity claims against defendants Westerfield, Durbin, and Taylor under 42 U.S.C. § 1983 because the complaint fails to state a claim upon which relief can be granted with respect to these claims.

**IT IS FURTHER ORDERED** that that the Clerk shall not issue process or cause process to issue upon the complaint as to plaintiff's Religious Land Use and Institutionalized Persons Act, First Amendment Establishment Clause, Due Process, and Federal Detainee Treatment Act of 2005 claims against defendants Westerfield, Durbin, and Taylor in their individual capacities because the complaint is legally frivolous or fails to state a claim upon which relief can be granted with respect to these claims.

**IT IS FURTHER ORDERED** that that the Clerk shall not issue process or cause process to issue upon the complaint as to plaintiff's First Amendment retaliation claims against defendants Durbin and Taylor in their individual capacities because the complaint is legally frivolous or fails to state a claim upon which relief can be granted with respect to these claims.

A separate Order of Partial Dismissal will accompany this Memorandum and Order.

Dated this 12th day of August, 2021.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE