**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JACOB ALLEN MONTEER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:21-CV-756 ACL |
| | ) | |
| ABL MANAGEMENT INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on the motion to dismiss plaintiff's second amended complaint filed by defendants Joe Taylor and Timothy Durbin. ECF No. 59. Self-represented plaintiff Jacob Allen Monteer filed a response. ECF No. 65. Defendants filed a reply. ECF No. 68. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c). For the reasons discussed below, the motion will be denied in part and granted in part.

**Background**

Plaintiff was a pretrial detainee at Phelps County Jail (the "Jail") when he initiated this action on June 10, 2021, pursuant to 42 U.S.C. § 1983. ECF No. 1. Plaintiff named four defendants in their official and individual capacities: ABL Management, Inc. ("ABL"), Heather Westerfield, Timothy Durbin, and Joe Taylor. Plaintiff sought monetary, declaratory, and injunctive relief pursuant to the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. 2000cc, *et seq.* ("RLUIPA"); the Detainee Treatment Act of 2005; and 42 U.S.C. § 1983 for First Amendment, Equal Protection, and Due Process violations. Plaintiff alleged he is a Muslim and defendants denied his requests for religious meals.

On August 12, 2021, the Court reviewed plaintiff's complaint pursuant to 28 U.S.C. § 1915 and directed the Clerk to issue process or cause process to issue on some of the claims against defendants. ECF No. 10. As to Durbin and Taylor, specifically, the Court dismissed the official and individual capacity claims under the Federal Detainee Treatment Act; official capacity claims under 42 U.S.C. § 1983, and individual capacity claims under RLUIPA, the First Amendment Establishment Clause, First Amendment retaliation, and Due Process for failure to state a claim.

On August 23, 2021, plaintiff filed a motion for reconsideration of the partial dismissal and requested leave to file an amended complaint. ECF Nos. 15, 16. The Court denied the motion for reconsideration, but granted his motion to file an amended complaint. ECF No. 17. Plaintiff filed his first amended complaint on September 22, 2021. ECF No. 35. On November 15, 2021, the Court reviewed the filing and directed plaintiff to file a second amended complaint to cure specific pleading deficiencies. ECF No. 46. The Court instructed him to reorganize his statement of the claim to comply with the Federal Rules of Civil Procedure, and to include facts regarding how each defendant was personally involved in or directly responsible for harming him. ECF No. 46.

After requesting and receiving multiple extensions, plaintiff filed his second amended complaint on March 7, 2022, seeking only monetary damages. ECF No. 57. On March 15, 2022, defendants Taylor and Durbin filed the instant motion to dismiss. ECF No. 59. The Court notes plaintiff is no longer incarcerated at Phelps County Jail.

### Second Amended Complaint

Plaintiff's second amended complaint names the same defendants in their official and individual capacities: ABL (food contractor for the Jail), Joe Taylor (Jail Administrator), Timothy Durbin (Sergeant), and Heather Westerfield (cook for ABL).[1] Because the instant motion seeks

---

[1] Taylor and Durbin assert in their instant motion to dismiss that "Plaintiff does not specify whether Defendant Durbin is sued in his individual or official capacity." ECF No. 60 at 3. This statement is inaccurate. Plaintiff's second amended complaint clearly lists the defendants and the capacities in which he intends to sue them. *See* ECF No. 57 at 19.

only to dismiss the claims brought against defendants Durbin and Taylor, this Memorandum and Order will focus only on the allegations against them.

Plaintiff begins his statement of claim asserting he is a sincere believer of the Muslim faith who requires a Kosher diet. ECF No. 57 at 11. He provides a general summary of "Kosher Law," explaining the types of foods he is permitted and how vegetables and meats must be prepared and stored to prevent contamination. *Id.* 11-12. He informs the Court that he has been incarcerated in at least four federal prisons and nine county jails, and describes his positive experience working in the kitchen at one of the federal institutions. *Id.* at 12. None of the statements made within the first two pages of his complaint relate to the named defendants or Phelps County Jail.

After his introductory paragraphs, plaintiff lists seven policies which he believes violates the Constitution:

> Policy 1: "There is no religious diet currently being offered for Phelps County inmates."

> Policy 2: "If an inmate requests a religious diet[,] they will be placed on an ovo-lacto vegetarian meal plan."

> Policy 3: "If an inmate is placed on [the ovo-lacto] meal plan and is seen consuming meat: they will lose any opportunity to enroll in a future religious diet – if one becomes available."

> Policy 4: There are "[a]nnual celebrations for Easter, Labor Day, Memorial Day, Christmas, 4th of July, and Thanksgiving," which includes a "special meal."

> Policy 5: "Passing out Jesus letters" on three consecutive Christmases stating, "Jesus died for [him]."

> Policy 6: "No Quran, no group services, no Muslim holidays."

> Policy 7: "I asked for a bible and got one. I will have to discover the date and name of the officer who gave it to me. The jail does sell bibles. I do not know if it is jail policy to keep a stock of bibles. Nor am I sure if the jail asks the Keefe Commissary people to sell bibles. I know there are bibles. Bibles for all."

*Id*. at 13-14.

Plaintiff asserts these policies violated his First Amendment Free Exercise rights because after he requested a Kosher meal plan, he was placed on an ovo-lacto vegetarian diet and prohibited from eating meat. *Id.* at 14. He further alleges defendants Taylor and Durbin demonstrated a preference for Christianity in violation of the First Amendment Establishment Clause because he was banned from consuming meat; did not receive the special meals containing meat on federal holidays; was unable to obtain a Quran, attend group services, or have Muslim meals; and was provided with a note about Jesus on Christmas. *Id.* at 14-15. He further alleges he was denied meat without due process, and discriminated and retaliated against for requesting a religious meal accommodation. *Id.* at 15.

Plaintiff asserts defendant Joe Taylor is in charge of the Jail and aware of the policies. Plaintiff states he asked to speak to Taylor, sent him messages, wrote to him, and directed his father to contact him. Plaintiff complains Taylor "has not done anything" and when asked about "why he permits these things," Taylor responded, "Who cares?" Plaintiff asserts Policies "4 and 5 began before Taylor became jail administrator," and Policies 1, 2, 3, 6, and 7, "began under Joe Taylor's leadership." Plaintiff believes, however, that Policies 1, 2, and 3 were created by ABL and not the Jail.

As to defendant Timothy Durbin, plaintiff alleges he "serve[d] the meals," "passe[d] out Jesus invitations," "enforce[d] the ban on meat," and "punished [him] for requesting a Kosher diet." He claims Durbin served him "probably hundreds" of non-Kosher meals. Plaintiff claims Durbin told him he "does not deserve better food" and directed him "to stop asking for religious meals." Plaintiff claims that in May of 2021, Durbin entered plaintiff's cell to convince him "to go back to the regular menu" and put him in lock down on two occasions for false rule violations. Plaintiff states that Durbin stopped retaliating against him when he reported his actions to a supervisor.

**Legal Standard for Motion to Dismiss**

The purpose of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is to test the legal sufficiency of the complaint. To survive a motion to dismiss for failure to state a claim, a plaintiff's allegations must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The reviewing court accepts the plaintiff's factual allegations as true and draws all reasonable inferences in favor of the nonmoving party. *Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017). But "[c]ourts are not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

**Discussion**

As a preliminary matter, Durbin and Taylor request that, [t]o the extent [p]laintiff attempts to reassert previously dismissed claims . . . the Court should dismiss those claims." ECF No 59. Defendants accurately state that upon initial § 1915 review of plaintiff's original complaint, the Court dismissed some of the claims against Durbin and Taylor. *See* ECF 10. Contrary to defendants' proposition, however, "an amended complaint *supersedes* an original complaint and renders the original complaint without legal effect." *In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000) (emphasis added).

Subsequent to its partial dismissal order, the Court permitted plaintiff to file two additional amended complaints. Thus, plaintiff renewed the dismissed claims by repleading them in his amendments. *See Beal v. Jones*, 2018 WL 4562897, at *3 (E.D. Mo. Sept. 24, 2018) ("Although the Court already dismissed plaintiff's claims against [defendant], plaintiff renewed these claims in his amended complaint."). Consequently, the Court will decline to dismiss claims pled in the

second amended complaint solely because they were dismissed on initial review of the original complaint.

### A. Official Capacity Claims against Durbin and Taylor

Naming a government official in his or her official capacity is the equivalent of naming the government entity that employs the official. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Here, Phelps County is alleged to employ defendants Taylor and Durbin. Phelps County is only liable when an official policy or custom of the municipality causes the alleged deprivation of constitutional rights. *Monell v. Dep't of Social Services*, 436 U.S. 658, 690-91 (1978).

"Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). *See also Russell v. Hennepin Cty.*, 420 F.3d 841, 847 (8th Cir. 2005) ("A policy is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible . . . for establishing final policy with respect to the subject matter in question"). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id.* at 390.

Alternatively, a plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, the plaintiff must prove:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dept.*, 725 F.3d 825, 828 (8th Cir. 2013). Finally, a plaintiff can show municipal liability by establishing a deliberately indifferent failure to train or supervise. To do so, the plaintiff must demonstrate a "pattern of similar constitutional violations by untrained employees." *S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Plaintiff lists seven polices which he believes violated his constitutional rights. In the instant motion to dismiss, defendants Durbin and Taylor argue that plaintiff's official capacity claims fail because a vegetarian diet, special meals for secular and federal holidays, receipt of a note about Jesus on Christmas, and access to bibles does not substantially burden plaintiff's exercise of his Muslim faith and do not coerce him into following a different religion.

The first three policies plaintiff asserts are unconstitutional center around his belief that an ovo-lacto vegetarian meal does not satisfy a Kosher diet. The Court notes that plaintiff appears to attribute policies 1, 2, and 3 to defendant ABL: "I think ABL created Policy 1, 2, and 3 since their name is on top of the [Religious Meal Preference] form" and the "'Religious Meal Preference' is – more literally – ABL Management Inc. Religious Meal Preference Request Form." *See* ECF No. 57 at 16. To the extent these policies are alleged to be created and implemented by ABL, plaintiff's official capacity claims against defendants Durbin and Taylor would fail because they are employed by Phelps County, not ABL.

Under the First Amendment, "prison inmates are entitled to reasonable accommodation of their religious dietary needs." *Love v. Reed*, 216 F.3d 682, 689 (8th Cir. 2000). It is well-settled that jail and prison inmates "have the right to be provided with food sufficient to sustain them in good health [and] that satisfies the dietary laws of their religion." *McElyea v. Babbitt*, 833 F.2d

196, 198 (9th Cir. 1987). "It is not well-established, however, that Muslims must be offered a meat-free diet." *Kind v. Frank*, 329 F.3d 979, 981 (8th Cir. 2003) (finding qualified immunity would protect prison officials who offered Muslim inmate pork-free but not vegetarian meals). Similarly, the Eighth Circuit has also held that a prison's meal plan regulations would *not* substantially burden a Muslim inmate's free exercise rights where inmate had access to *only* vegetarian entrees. *See also Patel v. United States Bureau of Prisons*, 515 F.3d 807, 810-812 & n.8 (8th Cir. 2008).

Other federal courts have reached conclusions similar to the Eighth Circuit. In *Williams v. Morton*, 343 F.3d 212 (3d Cir. 2003), the Third Circuit affirmed the dismissal of a lawsuit because "providing vegetarian meals [to Muslim prisoners], rather than Halal meals with meat, is rationally related to the legitimate penological interests in simplified food service, security and staying within the prison's budget." *Id.* at 218. The Sixth Circuit has held in an unpublished opinion that provision of a vegetarian diet adequately protects Muslim inmates. *Abdullah v. Fard*, 1999 WL 98529, at *1 (6th Cir. 1999) ("[Plaintiff] averred that a prohibition against non-Halal meat was fundamental to his religion. However, he can comply with this prohibition by eating vegetarian meals. Thus, [plaintiff's] First Amendment claim fails because the disputed policy does not force him to violate his religion."). *See also Lewis v. Ryan*,  2008 WL 1944112, at *31 (S.D. Cal. May 1, 2008) ("[T]o date, the majority of circuit and district courts that have looked at this specific issue have concluded there is no such clearly established right to Halal meals, with or without Halal meat, under the First Amendment's Free Exercise of Religion Clause, RLUIPA, or the Equal Protection Clause of the Fourteenth Amendment." (string cite omitted));  *Linehan v. Crosby*, 346 F. App'x 471 (11th Cir. 2009) (per curiam) (finding prison had compelling governmental interests to support denial of Kosher meals to Seventh-Day Adventist where vegetarian meals were provided); *Spight v.*

*Davidson*, 2014 WL 2811829, at *2 (M.D. Tenn. June 23, 2014) ("In short, the plaintiff has no constitutional right to meat.").

Thus, the alleged Jail policies of providing vegetarian meals to plaintiff fails to state a First Amendment violation because it does not place a substantial burden on his ability to practice the tenets of the Muslim faith. Moreover, the fact he is receiving an ovo-lacto diet due to his request for a religious meal accommodation contradicts "Policy 1," which he frames as "no religious diet currently being offered for Phelps County inmates." Although plaintiff may prefer to eat meat as part of his Kosher diet, his allegations fail to support a reasonable inference that the consumption of meat is sufficiently significant to an adherent of the Muslim faith and being denied meat imposed a substantial burden on his ability to freely exercise his religion.

Although plaintiff explains how foods can become non-Kosher through improper storage or preparation methods, he does not allege that the meals he was served were tainted or contaminated by the individual actions of Durbin or Taylor, or that they knew any contamination had occurred when providing him with his ovo-lacto meals. To the contrary, under the specific claims alleged against defendant Westerfield (who is employed by ABL, not Phelps County), he alleges she "is the actual person saying that [he] cannot get Kosher food" and the trays she prepares are stacked on the same cart causing the meals to be defiled. ECF No. 57 at 18. Plaintiff does not, however, allege that Durbin has any responsibility in preparing or stacking the trays onto carts, or that he was aware of or informed by plaintiff of any issue regarding the way trays were stored for transportation. The Court also notes that in plaintiff's original complaint, he asserted that defendant Durbin told him he was "getting a meal plan approved by a dietician specifically for his accommodation," showing Durbin was attempting to comply with plaintiff's request for a religious accommodation. *See* ECF No. 21.

As to the fourth and fifth policies, respectively, plaintiff alleges the Jail celebrated Easter, Labor Day, Memorial Day, Christmas, Fourth of July, and Thanksgiving by providing "special meals" to the inmates, and on Christmas he would receive a note about Jesus. Plaintiff states ham was served on Christmas and Easter, a hot dog or hamburger was served on the Fourth of July, and a hamburger or a chicken patty was served on Labor and Memorial Day. He complains he did not receive the special holidays meals because they contained meat, and claims the Christmas note was the Jail's attempt for him to "accept Jesus."

As stated above, the provision of vegetarian meals for a Kosher diet request is not violative of the First Amendment. Additionally, it has been held that an institution may offer special meals during an entire holiday season without violating the mandates of the First Amendment. *See Travillion v. Leon*, 248 F. App'x 353, 355-56 (3d Cir. 2007) (serving all inmates vegetarian meals during the entire Lent season "did not have the primary effect of advancing Catholicism or inhibiting other religions, nor did it foster the excessive entanglement of government with religion.").

To the extent, plaintiff is asserting that the provision of holiday meals or the receipt of a card on Christmas are policies that violate the Establishment Clause, such claims fail. The Establishment Clause prohibits government action that establishes an official religion or coerces individuals into participating in a particular religion. *Jackson v. Nixon*, 747 F.3d 537, 542 (8th Cir. 2014); *Munson v. Norris*, 435 F.3d 877, 880 (8th Cir. 2006); *Tarsney v. O'Keefe*, 225 F.3d 929, 935 (8th Cir. 2000). Plaintiff does not provide any non-conclusory facts to support a claim that the Jail, through a policy or custom, coerced him to adhere to a different religion by handing him a Christmas card or providing a special meal on a federal holiday. *See, e.g., Gonzalez v. Rivera*, 2018 WL 4571607, at *8 (E.D. Ark. Aug. 17, 2018), report and recommendation adopted, 2018 WL 4568589 (E.D. Ark. Sept. 21, 2018), *aff'd*, No. 18-3321, 2019 WL 10892087 (8th Cir. 2019)

(finding that merely handing an inmate an invitation to attend an Easter event was not coercive when an inmate can feel free to decline); *Blagman v. White*, 112 F. Supp. 2d 534, 540-41 (E.D. Va. 2000) (prison "observances of such traditional holidays as Christmas and Thanksgiving do not rise to the level of violations of the Establishment Clause" because "the law has come to recognize that many typical Thanksgiving and Christmas holiday observances are essentially secular in nature"); *Torricellas v. Poole*, 954 F. Supp. 1405, 1411-12 (C.D. Cal. 1997), *aff'd*, 141 F.3d 1179 (9th Cir. 1998) (prison Christmas party did not violate Establishment Clause).

Plaintiff frames the sixth policy as, "no Quran, no group services, and no Muslim holidays," and the seventh policy as "bibles for all." ECF No. 57 at 13. He states, "I do not know what day I was denied a Quran, or by whom Sgt. Glenn told me no – for services. I don't know if it's written policy or what. But it is something." *Id.* He further writes, "I asked for a bible and got one" from an officer he "will have to discover . . . the name of." *Id.* Notably, plaintiff is not alleging that Taylor or Durbin personally denied him a Quran, group services, or Muslim holidays, nor does he assert that he requested these specific items from them. He also does not allege that these policies were ratified or known by a Phelps County official. While plaintiff generally states that Durbin "passes out bibles," he does not allege a bible was given to him by Durbin or that Phelps County directed such distribution. *Jones v. Price*, 2021 WL 2589132, at *8 (E.D. Mo. June 24, 2021) ("Plaintiff cannot simply assert that he was not provided a Quran . . . and blame the three defendants who implemented the [policy]. He must indicate who he asked for a Quran and which defendant denied his request."). Plaintiff has been given two previous opportunities to amend his complaint, and has been explicitly directed to allege specific facts to support how defendants Durbin and Taylor violated his constitutional rights.

"This circuit has consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim." *Johnson v.*

*City of Ferguson*, 926 F.3d 504, 507 (8th Cir. 2019) (en banc); *see also Whitney v. City of St. Louis*, *Mo.*, 887 F.3d 857, 860-61 (8th Cir. 2018) (citing *Malone v. Hinman*, 847 F.3d 949, 955 (8th Cir. 2017) ("Because we conclude that Officer Hinman did not violate [plaintiff's] constitutional rights, there can be no § 1983 or *Monell* liability on the part of Chief Thomas and the City."); *Sitzes v. City of W. Memphis, Ark.*, 606 F.3d 461, 470 (8th Cir. 2010) (plaintiffs' claims "could not be sustained absent an underlying constitutional violation by the officer"); *Sanders v. City of Minneapolis, Minn.*, 474 F.3d 523, 527 (8th Cir. 2007) ("Without a constitutional violation by the individual officers, there can be no § 1983 or *Monell* . . . municipal liability.")). Also, significantly, plaintiff admits later in his complaint that he was given a Quran at some point in 2018. *See* ECF No. 57 at 16-17 ("I can discover the exact date, and who gave it to me, of the Quran being handed to in 2018."). This assertion contradicts the alleged "No Quran" policy. Plaintiff also fails to assert what services and holidays he was denied and when.

To any extent plaintiff intended to assert that the above stated policies were unconstitutional customs, such allegations also fail. In order to demonstrate a municipality has an unofficial custom, plaintiff must show a *widespread pattern of misconduct*, that policymaking officials were deliberately indifferent to or tacitly authorized the misconduct, and the custom was the driving force behind the constitutional violation. *Johnson*, 725 F.3d at 828. Here, plaintiff does not make any specific allegations of widespread misconduct. To the contrary, plaintiff alleges that his treatment was personal, stating: "[e]very person at this jail can have meat . . . [e]xcept me" and "I did not get a meal on the 4th of July, Labor Day, or Memorial Day . . . [a]ll other inmates got a holiday meal on those days." ECF No. 75 at 22. There are also no allegations as to improper training.

Thus, the motion to dismiss as to plaintiff's official capacity claims against defendants Taylor and Durbin will be granted.

**B. Individual Capacity Claim against Taylor**

Plaintiff's individual capacity claim against defendant Taylor is premised upon supervisory liability, which fails to state a claim under § 1983. Plaintiff alleges Taylor is the Jail Administrator who is in charge of the facility and aware of its policies. Plaintiff states he asked to speak to Taylor, sent him messages, wrote to him, and directed his father to contact him to let him "know what's going on," but Taylor did not respond and at one point said, "Who cares?" Plaintiff states in a conclusory fashion, "I think he approves" because "he has not done anything." Out of the seven policies plaintiff alleges are unconstitutional, plaintiff states only the last two "began under Taylor's leadership." Plaintiff asserts "ABL created Policy 1, 2, and 3" and "4 and 5 began before Taylor became jail administrator." ECF No. 57 at 16. As to the sixth and seventh policies, plaintiff does not allege Taylor created them, he only alleges they began after he became Jail Administrator.

To state a claim under 42 U.S.C. § 1983, a plaintiff must plead direct, personal involvement in constitutional misconduct. "In a § 1983 suit . . . the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. "Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (citing *Rizzo v. Goode*, 423 U.S. 362, 370 (1976)). *See also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under § 1983 where plaintiff fails to allege defendant was personally involved in or directly responsible for incidents that injured plaintiff); *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995) (respondeat superior theory inapplicable in § 1983 suits). Because liability for damages under § 1983 is personal, "each defendant's conduct must be independently assessed. Section 1983 does not sanction tort by association." *Smith v. City of Minneapolis*, 754 F.3d 541, 547-48 (8th Cir. 2014); *see also S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015).

Here, there is no allegation of direct, personal involvement by defendant Taylor with regard to plaintiff. In other words, plaintiff has not set forth any non-conclusory facts indicating Taylor was directly involved in or personally responsible for the alleged violations of plaintiff's constitutional rights. Plaintiff's assertion that Taylor failed to respond to his letters provides no supportive facts, such as when he sent such correspondence, the precise contents of the complaints, and whether it was Taylor's responsibility to respond to those types of inmate complaints. *See Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002) ("While the court must accept allegations of fact as true . . . the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations").

Moreover, plaintiff's allegation that Taylor did not respond to his oral and written complaints fails to state a claim under § 1983. *See Brown v. Babich*, 2010 WL 199974, at *2 (E.D. Mo. Jan. 13, 2010) (allegation that supervisor "who did not offer any solution or show concern" as to plaintiff's messages is legally frivolous because failure to respond to letters from inmates is not a constitutional violation). *See also Warren v. Norman*, 2011 WL 2039554, at *1 (E.D. Mo. May 25, 2011) (citing *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (general responsibility for supervising operations of prison is insufficient to establish personal involvement required to support liability under § 1983); *Rivera v. Goord*, 119 F.Supp.2d 327, 344 (S.D.N.Y. 2000) (allegations that inmate wrote to prison officials and was ignored are insufficient to hold those officials liable under § 1983); *Woods v. Goord*, 1998 WL 740782, at *6 (S.D.N.Y. Oct.23, 1998) (receiving letters or complaints does not render prison officials personally liable under § 1983); *Watson v. McGinnis*, 964 F. Supp. 127, 130 (S.D.N.Y. 1997) (allegations that an official ignored a prisoner's letter are insufficient to establish liability)).

Thus, the motion to dismiss as to plaintiff's individual capacity claims against defendant Taylor will be granted.

### C. Individual Capacity Claim against Durbin

Plaintiff alleges defendant Durbin was the individual who passed out meals to the inmates, enforced "the ban on meat," handed out notes about Jesus on Christmas, and "punished [him] for requesting a Kosher diet." ECF No. 57 at 17. Plaintiff states he is suing Durbin for (1) "violating [his] right to Religious Exercise;" (2)  "establishing a religion;" (3) "retaliating against [him] for asserting [his] rights;" (4) "depriving [him] of liberty and property;" and (5) "discrimination because of [his] religion." In the instant motion to dismiss, defendant Durbin contends plaintiff failed to allege sufficient facts to show individual liability. The Court will address each constitutional claim in detail.

#### 1. First Amendment Free Exercise

Plaintiff states ABL offers a "Religious Meal Preference" request form. *See* ECF No. 57 at 16 (the "'Religious Meal Preference' is – more literally – ABL Management Inc. Religious Meal Preference Request Form"). Plaintiff alleges he submitted a request for a Kosher diet due to his Muslim faith and was subsequently placed on an ovo-lacto vegetarian diet. Plaintiff asserts it is the Jail or ABL's policy to revoke his accommodation if he is caught eating meat. Plaintiff claims his First Amendment Free Exercise rights are being violated because the Muslim religion permits him to eat Kosher meat and, as a result, he should not be provided with meatless trays.

As fully discussed above, the Eighth Circuit has held that a vegetarian diet is an acceptable substitute for a Kosher request. *See Patel*, 515 F.3d at 810-12 & n. 8 (8th Cir. 2008) (prison's meal plan regulations did not substantially burden Muslim inmate's free exercise rights where inmate had access to only vegetarian entrees, and some of those entrees he had to pay for himself). "Plaintiff may prefer Halal meat entrees over the vegetarian and non-meat substitutes provided, but his food preferences, as a prisoner may be limited." *Sareini v. Burnett*, 2011 WL 1303399 (E.D. Mich. Mar. 31, 2011). Plaintiff has no right to choose the items on his menu. *Spies v.*

*Voinovich*, 173 F.3d 398, 506 (6th Cir. 1999) ( "[T]he fact that Plaintiffs dislike the alternate diet available does not render it unreasonable or legally deficient.").

Plaintiff alleges defendant Durbin refused to give him meat and forced him to be on a "veggie menu." ECF No. 57 at 17. He does not allege any action performed by Durbin that caused cross-contamination. Moreover, because it is not a clearly established constitutional requirement that Durbin is required to provide him with meat in lieu of an ovo-lacto diet, defendant is entitled to qualified immunity. *See Thompson v. Williams*, 320 F. App'x 678, 679 (9th Cir. 2009).

Thus, the motion to dismiss will be granted as to the First Amendment Free Exercise claims against defendant Durbin.

### 2. First Amendment Establishment Clause

Plaintiff asserts defendant Durbin "gives out Jesus invitations and passes out bibles" in violation of the Establishment Clause. ECF No. 57 at 17. The Establishment Clause of the First Amendment prohibits governments from making any laws respecting an establishment of religion. Under this clause, "[i]t is beyond dispute that, at a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which establishes a state religion or religious faith, or tends to do so." *Lee v. Weisman*, 505 U.S. 577, 587 (1992). Although there is some question as to what the proper test is for determining whether the Establishment Clause has been violated in different contexts, *see, e.g.*, *Tangipahoa Parish Bd. of Educ. v. Freiler*, 530 U.S. 1251 (2000) (Scalia, J., dissenting from denial of cert.), it appears the Eighth Circuit employs the *Lemon* test, under which a challenged practice will be upheld only if "(1) it has a secular purpose; (2) its principal or primary effect neither advances nor inhibits religion; and (3) it does not foster an excessive entanglement with religion." *ACLU Neb. Found. v. City of Plattsmouth, Neb.*, 419 F.3d 772, 775 (8th Cir. 2005) (citing *Lemon v. Kurtzman*, 403 U.S. 602, 612-13 (1971)).

As the Seventh Circuit has explained, the *Lemon* test is directed primarily at those situations in which the government has allegedly acted to assist an existing religious group, such as where local governments permit religious monuments on public lands. *Kerr v. Farrey*, 95 F.3d 472, 478-79 (7th Cir. 1996). Therefore, the Establishment Clause is not a perfect fit for claims, such as plaintiff's, in which he does not appear to be alleging that a government actor is "coercing him . . . to subscribe to religion generally, or to a particular religion." *Id.*

Here, plaintiff's allegations that defendant Durbin "passes out bibles" or provides a note about Jesus on Christmas does not rise to the level of an Establishment Clause violation. This Court cannot find that either action amounts to coercion or inhibits plaintiff's ability to practice his religion. As the defendants point out, an institution's service of special meals for certain holidays, including secular holidays, does not burden plaintiff's ability to practice his Muslim faith or coerce him to adhere to a specific religion, nor does a mere Christmas card. *See, e.g.*, *Blagman*, 112 F. Supp. 2d at 540-41 (prison "observances of such traditional holidays as Christmas and Thanksgiving do not rise to the level of violations of the Establishment Clause" because "the law has come to recognize that many typical Thanksgiving and Christmas holiday observances are essentially secular in nature"); *Torricellas v. Poole*, 954 F.Supp. 1405, 1411-12 (C.D. Cal. 1997), *aff'd*, 141 F.3d 1179 (9th Cir. 1998) (prison Christmas party did not violate Establishment Clause); *Florey v. Sioux Falls School Dist.*, 619 F.2d 1311, 1317 n.5 (8th Cir. 1980) (Christmas carols have non-religious cultural significance).

Moreover, plaintiff does not claim he was forcibly given a bible. To the contrary, he asserts he explicitly "asked for a bible and got one" from an officer other than defendant Durbin. ECF No. 57 at 14. He also admits a Quran was "handed to [him] in 2018," thus contradicting his allegation that he was unable to obtain a religious text other than the bible. ECF No. 57 at 17.

Thus, the motion to dismiss will be granted as to plaintiff's First Amendment Establishment Clause claim against defendant Durbin in his individual capacity.

### 3. Retaliation

Plaintiff alleges defendant Durbin searched his cell three times between May 8, 2021 and May 24, 2021, and locked him down twice for false rule violations. ECF No. 57 at 17. Plaintiff claims he reported these actions to Durbin's supervisor and he has "not been written up or searched by Durbin since then. So [he] think[s] [Durbin] was doing it maliciously in retaliation" for requesting religious meals. *Id.* Plaintiff asserts that during one search, in which Durbin "came into [his] cell and started tearing it up," Durbin was "lecturing [him] about how [he] need[s] to go back to the regular menu." *Id.* Plaintiff also asserts Durbin told him he does "not deserve better food" and is "wasting his time[.]" *Id.*

In order to allege a claim of retaliation in violation of the First Amendment, plaintiff must show (1) he engaged in a protected activity, (2) the official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity. *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004), *cert. denied*, 546 U.S. 860 (2005). The retaliatory conduct itself need not be a constitutional violation; the violation is acting in retaliation for "the exercise of a constitutionally protected right." *Cody v. Weber*, 256 F.3d 764, 771 (8th Cir. 2001) (citing *Madewell v. Roberts*, 909 F.2d 1203, 1206-07 (8th Cir. 1990)).

In the instant motion to dismiss, defendants argue plaintiff fails to state a retaliation claim because inmates do not have any privacy rights in the searches of their jail cells, even if the search was intended only to harass. Defendants' characterization of the issue as whether searching an inmate's cell violates an inmate's constitutional rights is incorrect. "It is immaterial whether a cell search, standing alone, violates a constitutional right, or whether an inmate has a legitimate

expectation of privacy in his cell. The question is whether conducting such a search *in retaliation* for the exercise of a constitutional right is actionable. The answer to that question is yes." *Smith v. Sachse*, 2018 WL 3159081, at *3 (E.D. Mo. June 28, 2018). "'An act taken in retaliation for the exercise of a constitutionally protected right under § 1983 is actionable even if the act, when taken for a different reason, would not have been actionable.'" *Id.* (quoting *Williams v. Department of Corrections*, 208 F.3d 681, 681 (8th Cir. 2000)).

Although the underlying conduct of prison officials may not be otherwise actionable under the Civil Rights Act, when a retaliatory motive has been alleged and is supported by sufficient facts, the complaint states a claim sufficient to avoid dismissal. *See, e.g.*, *Hall v. Sutton*, 755 F.2d 786, 787 (11th Cir. 1985). To ultimately succeed on his claim, a plaintiff must prove that retaliation was "*the actual motivating factor*" for the discipline. *Goff v. Burton*, 7 F.3d 734 (8th Cir. 1993). Although plaintiff's claims of retaliation may not withstand a motion for summary judgment, he has alleged marginally sufficient facts to allow the claim to survive a motion to dismiss. Defendants' response does not address whether or not plaintiff properly pled retaliatory motive, however, the Court finds he has.

The Court further notes that qualified immunity would not prevent this claim from proceeding. In analyzing qualified immunity claims, two questions should be considered: (1) whether the facts that a plaintiff has alleged or shown, when viewed in the light most favorable to plaintiff, support a finding that a defendant's conduct violated a constitutional right; and (2) whether that constitutional right was "clearly established" such that a reasonable official would have known his or her actions were unlawful. *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009) (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)). "A right is clearly established when the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Winslow v. Smith*, 696 F.3d 716, 738 (8th Cir. 2012) (internal

quotation marks and citation omitted). An action by a prison official "in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper." *Madewell v. Roberts*, 909 F.2d 1203, 1206 (8th Cir. 1990) (quotation and citations omitted).

Here, plaintiff's constitutional right to request a religious meal preference without retaliation was clearly established at the time the alleged searches occurred and false violations were issued. *See Freeman v. Blair*, 862 F. 2d 1330, 1332 (8th Cir. 1988) (law making retaliation for the exercise of a constitutional right actionable under § 1983 has been established for some time, and an objectively reasonable official could not fail to know of it). Viewing plaintiff's allegations as true and in a light most favorable to him, the Court concludes that a reasonable prison official would have known his retaliatory actions constituted a violation of plaintiff's First Amendment rights.

Thus, defendants are not entitled to the dismissal of plaintiff's § 1983 retaliation claim. Plaintiff's claim of First Amendment retaliation against defendant Durbin in his individual capacity survives the motion to dismiss.

### 4. Due Process

As a preliminary matter, plaintiff attempts to bring Fifth and Fourteenth Amendment due process claims against defendants, who are employees of Phelps County, not the Federal Government. Plaintiff's Fifth Amendment claims fail as a matter of law because a state actor cannot be liable for a Fifth Amendment violation. *See Barnes v. City of Omaha*, 574 F.3d 1003, 1006, n.2 (8th Cir. 2009) ("The Fifth Amendment's Due Process Clause applies only to the federal government or federal actions, and the Plaintiffs have not alleged that the federal government or a federal action deprived them of property."); *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United

States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'"); *Junior Chamber of Commerce of Kansas City, Mo. v. Mo. State Junior Chamber of Commerce*, 508 F.2d 1031, 1033 (8th Cir. 1975) (recognizing that a "federal action" is necessary "before there is any deprivation of due process in violation of the fifth amendment"); *Riley v. Camp*, 130 F.3d 958, 972, n.19 (11th Cir. 1997) ("The Fifth Amendment obviously does not apply here – the acts complained of were committed by state rather than federal officials."); *Wrinkles v. Davis*, 311 F. Supp. 2d 735, 738 (N.D. Ind. 2004) ("The Fifth Amendment's due process clause applies only to acts of the federal government and does not limit actions of state officials."). Because defendants are state actors, plaintiff fails to allege a Fifth Amendment violation in this case.

As to plaintiff's Fourteenth Amendment claims, he alleges he was forced to stop eating meat and prevented from buying meat at the commissary which "is taking [his] property away from [him] without due process." ECF No. 57 at 15. Notwithstanding this allegation, and as defendants argue, plaintiff does not allege that Durbin personally confiscated his property or deprived him of any liberty interest. ECF No. 60 at 11. While plaintiff alleges Durbin "serves the meals" and "enforces the ban on meat," his due process claim fails for three reasons: (1) it was plaintiff who requested a religious meal preference; (2) vegetarian diets are an appropriate accommodation for a Kosher diet; and (3) there is no federal constitutional right to purchase items from a commissary. *See Amos v. Stolzer*, 2014 WL 6473596, at *9 (E.D. Mo. Nov. 18, 2014) (citing *Vega v. Rell*, 2011 WL 2471295, at *25 (D. Conn. June 21, 2011) (inmates have no constitutional right to purchase items from a prison commissary)); *Tolbert v. City of Montgomery*, 2008 WL 819067, at *1 (M.D. Ala. Mar. 25, 2008) (inmates have no constitutionally protected interest in purchasing goods available through the prison commissary).

Thus, the motion to dismiss will be granted as to the Due Process claims against defendant Durbin.

### 5. *Religious Discrimination*

Plaintiff alleges he was discriminated against due to his request for a Kosher diet in four ways: (1) all inmates are given meat, except him; (2) in 2021 he did not receive the holiday meals offered on July 4th, Labor Day, and Memorial Day because they included hamburgers or hot dogs; (3) he was denied a Quran when he asked for one; and (4) the Jail offers bibles in the commissary but not Qurans.

Defendants Taylor and Durbin ask this Court to dismiss these claims because they are conclusory and not supported by facts tying them to such alleged violations. Defendants highlight that plaintiff requested a religious meal accommodation and the Jail complied through the provision of a vegetarian option, and he cannot claim that he has a constitutional right to consume meat. The Court agrees with defendants.

First, plaintiff has not alleged Durbin failed to provide him with a Quran when he requested one and, although plaintiff alleges defendant Durbin "passes out bibles," he does not allege Durbin was the individual who specifically denied him a Quran or that Durbin is responsible for stocking bibles in the commissary. Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights. *Martin*, 780 F.2d at 1338 (claim not cognizable under § 1983 where the plaintiff failed to allege that a defendant was personally involved in or directly responsible for incidents that injured him). *Jones*, 2021 WL 2589132, at *8 ("Plaintiff cannot simply assert that he was not provided a Quran . . . and blame the three defendants who implemented the [policy]. He must indicate who he asked for a Quran and which defendant denied his request."). Plaintiff also admits in his complaint that he received a Quran in 2018.

Second, to allege a religious discrimination claim under the Equal Protection Clause, plaintiff must show the government failed "to treat similarly situated people alike." *Rouse v. Benson*, 193 F.3d 936, 942 (8th Cir. 1999) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)) (holding no valid equal protection claim where plaintiff failed to present evidence to enable the court to discern the contours of the class to which he claimed to be similarly situated and only ambiguously asserted denial of an adequate opportunity to practice his religion). As a "threshold matter," a plaintiff must allege less-favorable treatment than similarly situated persons specifically "on account of . . . membership in a protected class." *Bogren v. Minn.*, 236 F.3d 399, 408 (8th Cir. 2000); *see Klinger v. Dep't of Corr.*, 31 F.3d 727, 731 (8th Cir. 1994) ("absent a threshold showing that [a plaintiff] is similarly situated to those who allegedly receive favorable treatment, the plaintiff does not have a viable equal protection claim").

Here, plaintiff fails to show he received treatment different than similarly situated inmates. Plaintiff contends he is treated differently than the general population as a Muslim because he does not get to eat meat. "The Fourteenth Amendment requires that the government 'treat similarly situated people alike,' a protection that applies to prison inmates." *Murphy v. Missouri Dep't of Corr.*, 372 F.3d 979, 984 (8th Cir. 2004) (citing *Rouse v. Benson*, 193 F.3d 936, 942 (8th Cir.1999); *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)). "State actors may, however, treat dissimilarly situated people dissimilarly without running afoul of the protections afforded by the clause." *Bogren*, 236 F.3d at 408 (citing *Klinger*, 31 F.3d at 731). "The similarly situated inquiry focuses on whether the plaintiffs are similarly situated to another group for purposes of the challenged government action." *Klinger*, 31 F. 3d at 731 (citing *More v. Farrier*, 984 F.2d 269, 271 (8th Cir.), *cert. denied*, 510 U.S. 819 (1993)). Plaintiff fails to state a claim because he has not pled that similarly situated Muslim prisoners were treated more favorably. To the contrary, he isolates his treatment to himself.

Thus, the motion to dismiss is granted as to plaintiff's equal protection claim against Durbin in his individual capacity.

Accordingly,

**IT IS HEREBY ORDERED** that defendants Timothy Durbin and Joe Taylor's Motion to Dismiss Plaintiff's Second Amended Complaint [ECF No. 59] is **DENIED in part** and **GRANTED in part**.

**IT IS FURTHER ORDERED** that defendants' motion to dismiss is **GRANTED** as to all claims against Joe Taylor in his official and individual capacities.

**IT IS FURTHER ORDERED** that defendants' motion to dismiss is **GRANTED** as to all claims against Timothy Durbin in his official capacity.

**IT IS FURTHER ORDERED** that defendants' motion to dismiss is **GRANTED** as to plaintiff's claims against Timothy Durbin in his individual capacity under the First Amendment Free Exercise Clause, the First Amendment Establishment Clause, Due Process, and Religious Discrimination.

**IT IS FURTHER ORDERED** that defendants' motion to dismiss is **DENIED** as to plaintiff's First Amendment retaliation claim against Timothy Durbin in his individual capacity.

**IT IS FURTHER ORDERED** that an appeal from this partial dismissal would not be taken in good faith.

**IT IS FURTHER ORDERED** that defendant Timothy Durbin shall file an answer within **fourteen (14) days** of the date of this Order.


s/_Abbie Crites-Leoni_
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE


Dated this 30th day of August, 2022.