UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JACOB ALLEN MONTEER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:21-CV-756 ACL |
| | ) |
| ABL MANAGEMENT INC., et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on the motions of defendants Heather Westerfield and ABL Management Inc., for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 69, 86. Self-represented plaintiff Jacob Allen Monteer filed responses. ECF No. 74, 93. Defendants Westerfield and ABL filed replies. ECF Nos. 89, 94. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c). For the reasons discussed below, defendants' motions will be granted.

**Background**

Plaintiff was a pretrial detainee at Phelps County Jail (the "Jail") when he initiated this action on June 10, 2021, pursuant to 42 U.S.C. § 1983. ECF No. 1. Plaintiff named four defendants in their official and individual capacities: ABL Management, Inc. ("ABL"), Heather Westerfield, Timothy Durbin, and Joe Taylor. Plaintiff sought monetary, declaratory, and injunctive relief pursuant to the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. 2000cc, *et seq*. ("RLUIPA"); the Detainee Treatment Act of 2005; and 42 U.S.C. § 1983 for First Amendment, Equal Protection, and Due Process violations. Plaintiff alleged he is a Muslim and defendants denied his requests for religious meals.

On August 12, 2021, the Court reviewed plaintiff's complaint pursuant to 28 U.S.C. § 1915. ECF No. 10. As to defendant Westerfield, the Court directed the Clerk to issue process or cause process to issue upon the complaint on plaintiff's individual capacity claims brought under the First Amendment Free Exercise Clause and the Fourteenth Amendment Equal Protection Clause, and the official capacity claim brought under RLUIPA. The remaining allegations against Westerfield were dismissed for failure to state a claim. On August 17, 2021, the Court directed the Clerk to issue process or cause process to issue upon the complaint as to ABL. ECF No. 13.

On August 23, 2021, plaintiff filed a motion for reconsideration of the partial dismissal and requested leave to file an amended complaint. ECF Nos. 15, 16. The Court denied the motion for reconsideration, but granted his motion to file an amended complaint. ECF No. 17. On September 13, 2021, the summons on ABL was returned unexecuted by the United States Marshal's Office. On September 15, 2021, the Court directed plaintiff to provide the Court with a service address for ABL.

Plaintiff filed his first amended complaint on September 22, 2021. ECF No. 35. On October 7, 2021, plaintiff filed a motion requesting the Court to issue process on ABL through defendant Westerfield's attorney of record, Thomas J. Smith.[1] ECF No. 39. On November 15, 2021, the Court reviewed plaintiff's first amended complaint pursuant to § 1915 and directed plaintiff to file a second amended complaint to cure specific pleading deficiencies. ECF No. 46. The Court instructed him to reorganize his statement of the claim to comply with the Federal Rules of Civil Procedure, and to include facts regarding how each defendant was personally involved in or directly responsible for harming him. ECF No. 46. Within this Order, the Court also denied as

---

[1] The Court notes that defendant Westerfield's attorney, Thomas J. Smith, entered his appearance on behalf of ABL on September 8, 2021, and subsequently indicated his filing was in error. *See* ECF No. 25.

moot plaintiff's request to issue process on ABL, because he was being directed to file a second amended complaint. *Id.* at 1, 18.

After requesting and receiving multiple extensions, plaintiff filed his second amended complaint on March 7, 2022 seeking monetary damages only. ECF No. 57. On April 13, 2022, defendant Heather Westerfield filed a motion for judgment on the pleadings. ECF Nos. 69. On May 5, 2022, the Court on its own motion directed the Clerk to issue process or cause process to issue upon the second amended complaint against defendant ABL by way of serving attorney Thomas J. Smith. ECF No. 71. On June 8, 2022, Mr. Smith entered his appearance on behalf of ABL, and filed a motion for judgment on the pleadings. ECF No. 86. The Court notes that plaintiff is no longer incarcerated at Phelps County Jail.

## Second Amended Complaint

Plaintiff's second amended complaint names the same defendants in their official and individual capacities: ABL (food contractor for the Jail), Joe Taylor (Jail Administrator), Timothy Durbin (Sergeant), and Heather Westerfield (cook for ABL). Because the instant motions for judgment on the pleadings seek only to dismiss the claims brought against defendants Westerfield and her alleged employer, ABL, this Memorandum and Order will focus only on the allegations against them.

Plaintiff begins his statement of claim asserting he is a sincere believer of the Muslim faith who requires a Kosher diet. ECF No. 57 at 11. He provides a general summary of "Kosher Law," explaining the types of foods he is permitted and how vegetables and meats must be prepared and stored to prevent contamination. *Id.* 11-12. He informs the Court that he has been incarcerated in at least four federal prisons and nine county jails, and describes his positive experience working in the kitchen at one of the federal institutions. *Id.* at 12. None of the statements made within the first two pages of his complaint relate to the named defendants or Phelps County Jail.

After the introductory paragraphs, plaintiff proceeds to list seven policies, which he believes violate the Constitution:

Policy 1: "There is no religious diet currently being offered for Phelps County inmates."

Policy 2: "If an inmate requests a religious diet[,] they will be placed on an ovo-lacto vegetarian meal plan."

Policy 3: "If an inmate is placed on [the ovo-lacto] meal plan and is seen consuming meat: they will lose any opportunity to enroll in a future religious diet – if one becomes available."

Policy 4: "Annual celebrations for Easter, Labor Day, Memorial Day, Christmas, 4th of July, and Thanksgiving," which includes a "special meal."

Policy 5: "Passing out Jesus letters" on three consecutive Christmases stating, "Jesus died for [him]."

Policy 6: "No Quran, no group services, no Muslim holidays."

Policy 7: "I asked for a bible and got one. I will have to discover the date and name of the officer who gave it to me. The jail does sell bibles. I do not know if it is jail policy to keep a stock of bibles. Nor am I sure if the jail asks the Keefe Commissary people to sell bibles. I know there are bibles. Bibles for all."

*Id*. at 13-14.

While his second amended complaint is somewhat unclear and contradictory as to whether the Jail, ABL, or both, are responsible for the creation of the aforementioned policies, plaintiff states: "I think ABL created Policy 1, 2, and 3 since their name is on top of the [Religious Meal Preference Request] form." ECF No. 57 at 16. Plaintiff asserts the "'Religious Meal Preference' is – more literally – ABL Management Inc. Religious Meal Preference Request Form." *Id.* at 16. Nowhere in the second amended complaint does plaintiff allege that policies 4 through 7 were created by Westerfield or ABL, or that the food contractor had anything to do with Christmas cards, bibles, Qurans, group services, or Muslim holidays.

Plaintiff addresses why he believes polices 1, 2, and 3 are violative of his constitutional rights under the section titled, "ABL Management Inc.," as follows:

- 4 -

> Policy 1 refuses me a religious diet. That violates the First Amendment Free Exercise Clause.
>
> Policy 2 forces me onto a different, non-religious diet. The kitchen did not serve me meals that other inmates got in 4th of July, Labor, and Memorial Day of 2021. And I was prohibited from consuming meat.
>
> Policy 3 because I requested religious accommodation. Their policies are discrimination.

*Id.* Consequently, the instant Memorandum and Order will only address policies 1, 2, and 3 as they relate to defendants Westerfield and her employer ABL.

As to defendant Westerfield, plaintiff asserts he is suing her for "free exercise violations," "discrimination," "retaliation," and "depriving [him] of liberty and property without Due Process." ECF No. 57 at 18. He identifies her as "the actual person saying that [he] cannot get Kosher food," and states she has refused him a religious diet since February 25, 2020. *Id.* He claims he knows the meals she gave him were non-Kosher "because Policy 1 says there is no religious meal" and "every tray is stacked on the same cart at mealtime, so every tray is defiled." *Id.* Plaintiff also complains that the "bread, bologna and cheese, biscuits, and cakes all contain defiled ingredients." *Id.* Prior to be being placed on the ovo-lacto vegetarian diet, plaintiff asserts he was provided with cornflake burritos, rice, and jelly for breakfast and bologna and cheese sandwiches for dinner from May 8, 2021 to May 24, 2021. Plaintiff claims these sandwiches were not Kosher despite Westerfield's submission that they were Kosher. He states that "to get even with him," he was on a diet that did not have vegetables and was "nutritionally inadequate." *Id.* He does not explain how the meals were unhealthy other than saying it could cause "long-term risk of dangerous health complications." *Id.*

**Legal Standard for Judgment on the Pleadings**

"A motion for judgment on the pleadings should be granted when, accepting all facts pled by the nonmoving party as true and drawing all reasonable inferences from the facts in favor of

the nonmoving party, the movant has clearly established that no material issue of fact remains and that the movant is entitled to judgment as a matter of law." *Schnuck Markets, Inc. v. First Data Merchant Servs. Corp.*, 852 F.3d 732, 737 (8th Cir. 2017) (cited case omitted).

A motion under Rule 12(c) is determined by the same standards that are applied to a motion under Rule 12(b)(6). *Ellis v. City of Minneapolis*, 860 F.3d 1106, 1109 (8th Cir. 2017). To survive a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008) (citing *Twombly*, 550 U.S. at 555 & n.3). This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

The Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable," *id.* at 556, and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief. *Twombly*, 550 U.S. at 555–56; Fed. R. Civ. P. 8(a)(2). The principle that a court must accept as true all of the allegations contained in a complaint does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678. In considering a Rule 12(c) motion, the Court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record.

**Discussion**

**A. Service on ABL**

As a preliminary matter, defendant ABL argues it should be dismissed from this action due to untimely service. The Court will decline to grant this request.

On September 13, 2021, the summons issued upon ABL was returned unexecuted. Consequently, the Court directed plaintiff to provide a proper service address for ABL. On October 7, 2021, plaintiff complied by filing a motion requesting the Court to issue process on ABL by serving Westerfield's attorney of record. This request was reasonable considering attorney Thomas J. Smith had previously entered his appearance on behalf of ABL, although he subsequently retracted his appearance without explanation. On November 15, 2021, after reviewing plaintiff's first amended complaint, the Court denied as moot plaintiff's motion to issue process upon ABL for the reason that he was required to file a second amended complaint to cure his pleading deficiencies. After requesting and receiving multiple extensions, plaintiff filed his second amended complaint on March 7, 2022. On May 5, 2022, the Court reviewed the file and on its own motion directed the Clerk to issue process or cause process to issue upon the second amended complaint against ABL in the manner previously requested by plaintiff. ECF No. 71.  On June 8, 2022, Mr. Smith entered his appearance on behalf of ABL.

Federal Rule of Civil Procedure 4(m) permits a Court to extend the time for service for an appropriate period if there is good cause. Although "good cause" is not defined in the rules, the Eighth Circuit has noted, "good cause is likely (but not always) to be found when (1) the plaintiff's failure to complete service in timely fashion is a result of the conduct of a third person, typically the process server, (2) the defendant has evaded service of the process or engaged in misleading conduct, (3) the plaintiff has acted diligently in trying to effect service or there are understandable mitigating circumstances, or (4) the plaintiff is proceeding *pro se* or *in forma pauperis*." *Kurka v.*

*Iowa Cty., Iowa*, 628 F.3d 953, 957 (8th Cir. 2010) (citing 4B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1137, at 342 (3d ed. 2002)).

Here, plaintiff is a self-represented litigant proceeding *in forma pauperis*. Plaintiff provided adequate information for the Court to effectuate service on October 7, 2021 after prior service was returned unexecuted. The Court, however, declined to serve ABL at that time because plaintiff was directed to submit a second amended complaint. The second amended complaint, which is now the operative complaint in this action, was filed on March 7, 2022. Summons on ABL was issued on May 2, 2022 via a Court Order. ABL will not be dismissed from this action based on delayed service because it was the Court, not plaintiff, who delayed service until the second amended complaint was filed.[2]

### B. Official Capacity Claims against Westerfield and ABL

Naming a government official in his or her official capacity is the equivalent of naming the government entity that employs the official. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Here, ABL is alleged to employ Westerfield. ABL is only liable when an official policy or custom of the corporation causes the alleged deprivation of federal rights. *See Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975 (8th Cir. 1993) (stating that a corporation acting under color of state law will only be held liable where "there is a policy, custom or action by those who represent official policy that inflicts injury actionable under § 1983"). *See also Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993) ("It is clear that a private entity which contracts with the state to perform a traditional state function such as providing medical services to prison inmates may be sued under § 1983 as one acting "under color of state law."), *abrog. on other grounds as recog. by Warren v. Prison Health Servs., Inc.*, 576 F. App'x 545, 559 (6th Cir. 2014).

---

[2] Even where good cause is not shown, the Court has discretion to extend the time for service if plaintiff shows that the failure to timely serve defendant was due to "excusable neglect." See *Kurka v. Iowa Cty., Iowa*, 628 F.3d 953, 957 (8th Cir. 2010). Because the Court finds good cause, the Court need not reach the question of excusable neglect.

"Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). *See also Russell v. Hennepin Cty.*, 420 F.3d 841, 847 (8th Cir. 2005) ("A policy is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible . . . for establishing final policy with respect to the subject matter in question"). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id.* at 390.

Alternatively, a plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, the plaintiff must prove:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dept.*, 725 F.3d 825, 828 (8th Cir. 2013). Finally, a plaintiff can show municipal liability by establishing a deliberately indifferent failure to train or supervise. To do so, the plaintiff must demonstrate a "pattern of similar constitutional violations by untrained employees." *S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

In the instant motion for judgment on the pleadings, defendant Westerfield argues plaintiff's official capacity claims fail because "the alleged policies themselves establish no violation occurred." ECF No. 70 at 7. Specifically, Westerfield asserts it is constitutionally adequate to provide a vegetarian diet for a Kosher food request, and the provision of an ovo-lacto diet evidences that she and ABL provided religious meal accommodations. *Id.* at 7-8. Westerfield further contends that no custom has been established because all of plaintiff's allegations are personal to him and not the result of some widespread misconduct. *Id.* at 8. ABL argues the same.

The first three policies plaintiff asserts are unconstitutional center around his belief that an ovo-lacto vegetarian meal does not qualify as an adequate substitute for a Kosher diet. Under the First Amendment, "prison inmates are entitled to reasonable accommodation of their religious dietary needs." *Love v. Reed*, 216 F.3d 682, 689 (8th Cir. 2000). It is well-settled that jail and prison inmates "have the right to be provided with food sufficient to sustain them in good health [and] that satisfies the dietary laws of their religion." *McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987). "It is not well-established, however, that Muslims must be offered a meat-free diet." *Kind v. Frank*, 329 F.3d 979, 981 (8th Cir. 2003) (finding qualified immunity would protect prison officials who offered Muslim inmate pork-free but not vegetarian meals). Similarly, the Eighth Circuit has also held that a prison's meal plan regulations do *not* substantially burden a Muslim inmate's free exercise rights where the inmate had access to *only* vegetarian entrees. *See also Patel v. United States Bureau of Prisons*, 515 F.3d 807, 810-812 & n.8 (8th Cir. 2008).

Other federal courts have reached conclusions similar to the Eighth Circuit. In *Williams v. Morton*, 343 F.3d 212 (3d Cir. 2003), the Third Circuit affirmed the dismissal of a lawsuit because "providing vegetarian meals [to Muslim prisoners], rather than Halal meals with meat, is rationally related to the legitimate penological interests in simplified food service, security and staying within the prison's budget. *Id.* at 218. The Sixth Circuit has held in an unpublished opinion that provision

of a vegetarian diet adequately protects Muslim inmates. *Abdullah v. Fard,* 1999 WL 98529, at *1 (6th Cir. 1999) ("[Plaintiff] averred that a prohibition against non-Halal meat was fundamental to his religion. However, he can comply with this prohibition by eating vegetarian meals. Thus, [plaintiff's] First Amendment claim fails because the disputed policy does not force him to violate his religion."). *See also Lewis v. Ryan*, 2008 WL 1944112, at *31 (S.D. Cal. May 1, 2008) ("[T]o date, the majority of circuit and district courts that have looked at this specific issue have concluded there is no such clearly established right to Halal meals, with or without Halal meat, under the First Amendment's Free Exercise of Religion Clause, RLUIPA, or the Equal Protection Clause of the Fourteenth Amendment.") (string cite omitted); *Linehan v. Crosby*, 346 F. App'x 471 (11th Cir. 2009) (per curiam) (finding prison had compelling governmental interests to support denial of Kosher meals to Seventh-Day Adventist where vegetarian meals were provided); *Spight v. Davidson*, 2014 WL 2811829, at *2 (M.D. Tenn. June 23, 2014) ("In short, the plaintiff has no constitutional right to meat.").

Thus, the alleged policy of providing ovo-lacto vegetarian meals to plaintiff fails to state a First Amendment violation because it does not place a substantial burden on his ability to practice the tenets of the Muslim faith. Plaintiff repeatedly alleges that a vegetarian diet is violative of the Muslim faith, however, Eighth Circuit precedent is unsupportive of such a contention. Further, he does not allege that it is ABL policy to contaminate or defile religious meals, or to provide nutritionally inadequate meals.

Moreover, the fact he is receiving an ovo-lacto vegetarian diet due to his request for a religious meal accommodation contradicts "policy 1," which he frames as "no religious diet currently being offered for Phelps County inmates." Also, plaintiff affirmatively asserts ABL has a request form titled, 'Religious Meal Preference,' which he completed and submitted. ECF No. 57 at 13. As to plaintiff's allegation that ABL policy prevented him from eating meat on federal

holidays, he does not state a constitutional violation because his vegetarian diet was a direct result of his request for a religious accommodation. *See also Blagman v. White*, 112 F. Supp. 2d 534, 540-41 (E.D. Va. 2000) (prison "observances of such traditional holidays as Christmas and Thanksgiving do not rise to the level of violations of the Establishment Clause" because "the law has come to recognize that many typical Thanksgiving and Christmas holiday observances are essentially secular in nature"); *Torricellas v. Poole*, 954 F.Supp. 1405, 1411-12 (C.D. Cal. 1997), *aff'd*, 141 F.3d 1179 (9th Cir. 1998) (prison Christmas party did not violate Establishment Clause).

Plaintiff also fails to show that policies 1, 2, or 3 were unconstitutional customs. In order to demonstrate a municipality has an unofficial custom, plaintiff must show a *widespread pattern of misconduct*, that policymaking officials were deliberately indifferent to or tacitly authorized the misconduct, and the custom was the driving force behind the constitutional violation. *Johnson*, 725 F.3d at 828. Here, plaintiff does not make any specific allegations of widespread misconduct. To the contrary, plaintiff alleges his treatment was personal, stating: "[e]very person at this jail can have meat . . . [e]xcept me" and "I did not get a meal on the 4th of July, Labor Day, or Memorial Day . . . [a]ll other inmates got a holiday meal on those days." ECF No. 75 at 22. There are also no allegations related to improper training.

Thus, defendant Westerfield's motion for judgment on the pleadings as to plaintiff's official capacity claims against her will be granted. For these same reasons, plaintiff's official claims against ABL, pursuant to 42 U.S.C. § 1983, will be dismissed. *See Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 690-91 (1978) (corporation acting under color of state law will only be held liable under § 1983 if it responsible for implementation of an unconstitutional policy or adoption of an unconstitutional custom – it cannot be held liable simply because it employs a tortfeasor).

### C. Individual Capacity Claims against Westerfield and ABL

Plaintiff states he is suing Westerfield for "free exercise violations," "discrimination," "retaliation," and "depriving [him] of liberty and property without Due Process." ECF No. 57 at 18. He states he is suing ABL for the same claims, except retaliation. ECF No. 57 at 16. The Court will address each constitutional claim in detail.

#### 1. First Amendment Free Exercise

Plaintiff alleges ABL offers a "Religious Meal Preference" request form, that he submitted a request for a Kosher diet due to his Muslim faith, and was subsequently placed on an ovo-lacto vegetarian diet. Plaintiff asserts it is the Jail's policy to revoke his accommodation if he is caught eating meat. As fully discussed above, the Eighth Circuit has held that a vegetarian diet is an acceptable substitute for a Kosher request. *See Patel*, 515 F.3d at 810-12 & n. 8 (prison's meal plan regulations did not substantially burden Muslim inmate's free exercise rights where inmate had access to only vegetarian entrees, and some of those entrees he had to pay for himself). "Plaintiff may prefer Halal meat entrees over the vegetarian and non-meat substitutes provided, but his food preferences, as a prisoner may be limited." *Sareini v. Burnett*, 2011 WL 1303399 (E.D. Mich. Mar. 31, 2011). Plaintiff has no right to choose the items on his menu. *Spies v. Voinovich*, 173 F.3d 398, 506 (6th Cir. 1999) ( "[T]he fact that Plaintiffs dislike the alternate diet available does not render it unreasonable or legally deficient."). Thus, the Court finds plaintiff's second amended complaint fails to state a claim against Westerfield and ABL to the extent he alleges they responded to his "Religious Meal Preference" request form for a Kosher diet by providing him with an ovo-lacto vegetarian diet.

Under the section designated to allege claims solely against Westerfield, plaintiff further writes, he "knows the meals she gives [him] are not Kosher because Policy 1 says so" and "every tray [wa]s stacked on the same cart at mealtime, so every tray [wa]s defiled." ECF No. 57 at 18.

He further asserts that from May 8, 2021 to May 24, 2021, he "got bologna and cheese sandwiches at dinner" which he claims were not Kosher despite Westerfield's representations "that it was the Kosher menu." *Id.* Plaintiff asserts she lied.

These allegations against Westerfield are conclusory and mere speculation as he provides no facts to support that the trays or meals were actually contaminated or non-Kosher. While plaintiff states Westerfield was the cook and the trays were stacked together, he does not allege she had any responsibility in preparing or stacking the trays onto carts, or that she was aware of any issue regarding the way trays were stored for transportation. To the contrary, plaintiff admits she told a Jail official that she was providing him with Kosher meals. ECF No. 27 at 18 ("Corporal Alexander went to go talk to [Westerfield]. She told him that it was the Kosher meal."). Without a factual underpinning to support a claim of contamination, plaintiff's allegations amount to legal conclusions, which are not entitled to the presumption of truth. *See Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002) (stating that while "court must accept allegations of fact as true . . . the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations.").

To any extent Westerfield erroneously served him non-Kosher meals for a two-week period between May 8, 2021 to May 24, 2021, numerous courts have recognized that an official's negligence in complying with a prisoner's religious diet does not violate the constitution. *See Colvin v. Caruso*, 605 F.3d 282, 293-94 (6th Cir. 2010) (holding that negligence by prison officials in implementing kosher-food requirements is not actionable under the First Amendment); *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (isolated acts of negligence in providing kosher diet do not support a free-exercise claim); *Lovelace v. Lee*, 472 F.3d 174, 201 (4th Cir. 2006) ("[Plaintiff] must assert conscious or intentional interference with his free exercise rights to state a valid claim under § 1983.").

Thus, the motions for judgment on the pleadings will be granted as to the First Amendment Free Exercise claims against defendants Westerfield and ABL.

### 2. Retaliation

Plaintiff alleges a First Amendment retaliation claim against Westerfield only, not ABL. He asserts that for a sixteen-day period in May of 2021, prior to his placement on an ovo-lacto vegetarian diet, Westerfield offered him "a diet that didn't even have vegetables to get even with [him]" for requesting a religious accommodation. ECF No. 57 at 18. He claims he received cornflake burritos for breakfast and bologna sandwiches for dinner. He claims he got "sick from Westerfield's special menu" because it was "nutritionally inadequate" and put him "in long-term risk of dangerous health complications." *Id.* He states he "had to be medicated" by a Jail doctor "to cope with everything," but does not allege that the medication was given to him due to a diet deficiency or that the doctor expressed concern for his diet or nutrition. *Id.* at 19. He then states, "the diarrhea and vomiting and cramps were very severe." *Id.*

Prisoners have a right to receive nutritionally adequate food. *Wishon v. Gammons*, 978 F.2d 446, 449 (8th Cir. 1992). *See also Divers v. Dep't of Corr.*, 921 F.2d 191, 194 (8th Cir. 1990) ("Prison officials must . . . provide a nutritionally adequate diet"); *Burgin v. Nix*, 899 F.2d 733, 734 (8th Cir. 1990) ("One constitutional right retained by the prisoner is the right to an adequate diet"); *Simmons v. Cook*, 154 F.3d 805, 807 (8th Cir. 1998) ("Prison officials must ensure that inmates receive adequate food, clothing, and medical care"). "A plaintiff may demonstrate violation of his constitutional rights by evidence that the food he was served was nutritionally inadequate or prepared in a manner presenting an immediate danger to his health, or that his health suffered as a result of the food." *Ingrassia v. Schafer*, 825 F.3d 891, 897 (8th Cir. 2016).

In order to allege a claim of retaliation in violation of the First Amendment, plaintiff must show (1) he engaged in a protected activity, (2) the official took adverse action against him that

would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity. *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004), *cert. denied*, 546 U.S. 860 (2005). The retaliatory conduct itself need not be a constitutional violation; the violation is acting in retaliation for "the exercise of a constitutionally protected right." *Cody v. Weber*, 256 F.3d 764, 771 (8th Cir. 2001) (citing *Madewell v. Roberts*, 909 F.2d 1203, 1206-07 (8th Cir. 1990)).

Here, plaintiff provides no factual evidence that the food provided to him was actually "nutritionally inadequate," "prepared in a manner presenting an immediate danger to his health," or that "his health suffered as a result of the food." *See Ingrassia*, 825 F.3d at 897; *Kayser v. Caspar*, 16 F.3d 280, 281 (8th Cir. 1994) (concluding that a prisoner's self-diagnosis alone will not support a medical conclusion). His allegation that sixteen days of a repetitive diet without vegetables caused a "long-term risk of dangerous health complications" is a conclusory statement. Yet, more importantly, it is a contradictory statement. In a previous filing, plaintiff admitted he did receive vegetables six times in that sixteen-day period. *See* ECF No. 35-1, at 6.

Although plaintiff stated he saw a doctor "to cope" and experienced diarrhea, vomiting, and cramps, he did not allege these symptoms were caused by the meals or that the doctor treated him for malnutrition or diet-related issues. It is also unclear as to whether he experienced those symptoms within the sixteen day period. Significantly, in an earlier amended complaint, plaintiff asserted that the diarrhea, vomiting, and cramps were due to anxiety, and not because of the food he was provided. *See* ECF No. 35-1 at 7-8 ("I had beg[u]n to experience severe cramps. I would throw up . . . coupled with diarrhea. . . . Dr. Kessler said it was caused by anxiety"). Moreover, it appears from his allegations that once plaintiff complained, he was placed on the ovo-lacto vegetarian diet. Plaintiff simply fails to show Westerfield took adverse action against him that would chill a person of ordinary firmness from continuing in the activity.

Thus, the motion for judgment on the pleadings will be granted as to the First Amendment retaliation claims against defendant Westerfield.

### 3. Religious Discrimination under Equal Protection

Plaintiff alleges Westerfield and ABL discriminated against him by placing him on a meatless ovo-lacto vegetarian diet and denying him holiday meals on the 4th of July, Labor Day, and Memorial Day, because they included hamburgers or hot dogs.[3]

To allege a religious discrimination claim under the Equal Protection Clause, plaintiff must show that the government failed "to treat similarly situated people alike." *Rouse v. Benson*, 193 F.3d 936, 942 (8th Cir. 1999) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)) (holding no valid equal protection claim where plaintiff failed to present evidence to enable the court to discern the contours of the class to which he claimed to be similarly situated and only ambiguously asserted denial of an adequate opportunity to practice his religion). As a "threshold matter," a plaintiff must allege less-favorable treatment than similarly situated persons specifically "on account of . . . membership in a protected class." *Bogren v. Minn.*, 236 F.3d 399, 408 (8th Cir. 2000); *see Klinger v. Dep't of Corr.*, 31 F.3d 727, 731 (8th Cir. 1994) ("absent a threshold showing that [a plaintiff] is similarly situated to those who allegedly receive favorable treatment, the plaintiff does not have a viable equal protection claim").

Here, plaintiff fails to show he received treatment from ABL or Westerfield different than similarly situated persons. Plaintiff contends he is treated differently than the general population as a Muslim because he does not get to eat meat. "The Fourteenth Amendment requires that the government 'treat similarly situated people alike,' a protection that applies to prison inmates." *Murphy v. Missouri Dep't of Corr.*, 372 F.3d 979, 984 (8th Cir. 2004) (citing *Rouse v.*

---

[3] The Court has exhaustively discussed that a vegetarian diet is a constitutionally adequate substitute for a Kosher religious meal request, and there is no constitutional right to eat meat in prison.

*Benson*, 193 F.3d 936, 942 (8th Cir. 1999); *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)). "State actors may, however, treat dissimilarly situated people dissimilarly without running afoul of the protections afforded by the clause. *Bogren*, 236 F.3d at 408 (citing *Klinger*, 31 F.3d at 731). "The similarly situated inquiry focuses on whether the plaintiffs are similarly situated to another group for purposes of the challenged government action." *Klinger*, 31 F. 3d at 731 (citing *More v. Farrier*, 984 F.2d 269, 271 (8th Cir.), *cert. denied*, 510 U.S. 819 (1993)).

Plaintiff has not pled that similarly situated Muslim prisoners were treated more favorably. To the contrary, plaintiff alleges: "Every person at the jail can have meat. Except for [him] for requesting a religious meal." ECF No. 57 at 15. He does not allege that he is treated differently than another Muslim inmate. In fact, the complaint is completely silent as to whether any other Muslim inmates were housed with him at the Jail during the relevant period.

Thus, the motions for judgment on the pleadings will be granted as to Equal Protection claims against defendants Westerfield and ABL.

### *4. Due Process*

Plaintiff attempts to bring Fifth and Fourteenth Amendment due process claims against state defendants. Plaintiff's Fifth Amendment claims fail as a matter of law because a state actor cannot be liable for a Fifth Amendment violation. *See Barnes v. City of Omaha*, 574 F.3d 1003, 1006, n.2 (8th Cir. 2009) ("The Fifth Amendment's Due Process Clause applies only to the federal government or federal actions, and the Plaintiffs have not alleged that the federal government or a federal action deprived them of property."); *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'"); *Junior Chamber of Commerce*

*of Kansas City, Mo. v. Mo. State Junior Chamber of Commerce*, 508 F.2d 1031, 1033 (8th Cir. 1975) (recognizing that a "federal action" is necessary "before there is any deprivation of due process in violation of the fifth amendment"); *Riley v. Camp*, 130 F.3d 958, 972, n.19 (11th Cir. 1997) ("The Fifth Amendment obviously does not apply here-the acts complained of were committed by state rather than federal officials."); *Wrinkles v. Davis*, 311 F. Supp. 2d 735, 738 (N.D. Ind. 2004) ("The Fifth Amendment's due process clause applies only to acts of the federal government and does not limit actions of state officials."). Because defendants Westerfield and ABL are not federal actors, plaintiff fails to allege a Fifth Amendment violation.

As to plaintiff's Fourteenth Amendment claim, he alleges he was forced to stop eating meat and prevented from buying meat at the commissary which "is taking [his] property away from [him] without due process." ECF No. 57 at 15. While plaintiff alleges Westerfield "cooks the meals" and ABL's policies "denies [his] religious liberty" and "takes his property," his due process claims fail for three reasons: (1) it was plaintiff who requested a religious meal preference; (2) vegetarian diets are an appropriate accommodation for a Kosher diet; and (3) there is no federal constitutional right to purchase items from a commissary. *See Amos v. Stolzer*, 2014 WL 6473596, at *9 (E.D. Mo. Nov. 18, 2014) (citing *Vega v. Rell*, 2011 WL 2471295, at *25 (D. Conn. June 21, 2011) (inmates have no constitutional right to purchase items from a prison commissary)); *Tolbert v. City of Montgomery*, 2008 WL 819067, at *1 (M.D. Ala. Mar. 25, 2008) (inmates have no constitutionally protected interest in purchasing goods available through the prison commissary).

Moreover, plaintiff makes no allegations supporting how the food contractor or cook prevented him from making purchases at a Jail commissary or knew what purchases were made in order to effect whether he could remain on an ovo-lacto vegetarian diet.

Thus, the motions for judgment on the pleadings will be granted as to the Due Process claims against defendants Westerfield and ABL.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Heather Westerfield's Motion for Judgment on the Pleadings [ECF No. 69] is **GRANTED**.

**IT IS FURTHER ORDERED** that defendant ABL Management Inc.'s Motion for Judgment on the Pleadings [ECF No. 86] is **GRANTED**.

**IT IS FURTHER ORDERED** that an appeal from this dismissal would not be taken in good faith.

s/ *Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 30th day of August, 2022.